**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:15-cv-01543 |
| v. | § | |
| | § | |
| 3S-SMART SOFTWARE SOLUTIONS, | § | |
| GMBH, | § | |
| | § | |
| Defendant. | § | |

**<u>AMENDED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND
IMPROPER VENUE, OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ............................................................................1

    A.  The Parties ...............................................................................................2

        1.  3S-Smart Software Solutions, GmbH ..........................................2

        2.  Rockwell Automation, Inc. ..........................................................3

    B.  This Litigation .........................................................................................3

II.  THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION ..................................................................................................3

    A.  Legal Standard .........................................................................................3

    B.  Analysis....................................................................................................5

III.  THE COURT SHOULD DISMISS THIS ACTION FOR IMPROPER VENUE..............7

    A.  Legal Standard .........................................................................................7

    B.  Analysis....................................................................................................8

IV.  ALTERNATIVELY, TRANSFER TO THE EASTERN DISTRICT OF WASHINGTON IS APPROPRIATE ...............................................................10

    A.  Legal Standard .......................................................................................10

    B.  This Action Could Have Been Filed in the Eastern District of Washington. ........12

    C.  The Private Factors Strongly Favor Transfer.........................................13

        1.  The Relevant Evidence is Maintained in Washington while None Exists in the Eastern District of Texas.......................................13

        2.  Far More Witnesses Are Subject to Compulsory Process In the Eastern District of Washington Than In this Court. ..................14

        3.  The Eastern District of Washington Is a More Convenient and Less Expensive Venue for Witnesses than the Western District of Texas.........15

        4.  The Other Practical Considerations Favor Transfer. .................16

    D.  The Public Factors Strongly Favor Transfer.........................................17

V.  CONCLUSION..................................................................................................18

ii

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. Apple*,
    No. 6:13-cv-28 (E.D. Tex. Apr. 11, 2013)............................................................................10

*AMP Inc. v. Burndy of Midwest, Inc.*,
    340 F. Supp. 21 (N.D. Ill.1971) ........................................................................................12

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987).....................................................................................................4, 5, 7

*Balawajder v. Scott*,
    160 F.3d 1066 (5th Cir.1998) ...........................................................................................11

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    No. 6:12-cv-499 (E.D. Tex. Mar. 31, 2014) ...................................................................9

*Bluestone Innovations Tex. v. Formosa Epitaxy*,
    822 F. Supp. 2d 657 (E.D. Tex. 2011)...............................................................................6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)............................................................................................................4

*Cent. Freight Lines, Inc. v. APA Transp. Corp.*,
    322 F.3d 376 (5th Cir. 2003) .............................................................................................4

*Dataquill v. Apple*,
    No. 1:13-cv-706 (W.D. Tex. Jun. 14, 2014) ....................................................................10

*Elecs. for Imaging v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003)..........................................................................................5

*Evolutionary Intelligence v. Apple*,
    No. 6:12-cv-00783 (E.D. Tex. Aug. 27, 2013) ................................................................10

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009).......................................................................11, 13, 15, 16

*Gonzalez v. Autotrader.com, Inc.*,
    No. 14-cv-630, 2015 WL 1387858 (E.D. Tex. Mar. 25, 2015) .......................................10

*Goodyear Dunlop Tires Operations S.A. v. Brown*,
    564 U.S. ___, 131 S. Ct. 2846 (2011).................................................................................4

*GTE New Media Services, Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ...................................................................................9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .....................................................................................................4

*In re Hoffmann-La Roche*,
    587 F.3d 1333 (Fed. Cir. 2009) .................................................................................15

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1359 (Fed. Cir. 2001) ...................................................................................4

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation and
    Placement*, 326 U.S. 310 (1945) .................................................................................6

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) .................................................................................11

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) .................................................................................11

*LSI Indus. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000) ...................................................................................4

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
    425 F. Supp. 2d 325 (E.D.N.Y. 2006) ......................................................................15

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ..................................................................12, 14, 17

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) ...............................................................................3, 10

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010) ...................................................................................6

*Opperman v. Path*,
    No. 12-cv-219 (W.D. Tex. Jan. 15, 2013) ................................................................10

*Personal Web Techs. v. Apple*,
    No. 6:12-cv-660 (E.D. Tex. Feb. 12, 2014) ..............................................................10

*Plant Equip. Inc. v. Intrado Inc.*,
    No. 2:09-cv-395, 2010 WL 2465358 (E.D. Tex. June 16, 2010) ..............................13

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266, 271 (5th Cir. 2006) ...............................................................................6

*Teknekron Software Sys., Inc. v. Cornell Univ.*,
 No. 93-cv-20122, 1993 WL 215024 (N.D. Cal. June 14,1993)...............................................12

*In re Toa Technologies, Inc.*,
 543 F. App'x 1006 (Fed. Cir. 2013) .....................................................................................13

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008)..............................................................................11, 13, 17

*Van Dusen v. Barrack*,
 376 U.S. 612 (1964) ...............................................................................................................11

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
 No. 2:09-cv-105, 2009 WL 3784371 (E.D. Tex. Nov. 10, 2009)............................................11

*VE Holdings Corp. v. Johnson Gas Appliance Co.*,
 917 F.2d 1574 (Fed. Cir. 1990)............................................................................................7, 8

*Viam Corp. v. Iowa Export-Import Trading Co.*,
 84 F.3d 424 (Fed. Cir. 1996)...........................................................................................3, 4, 5

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*").......................................................11, 16, 17

*In re Volkswagen of Am., Inc.*
 545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ..................................11, 13, 15, 17

**Statutes, Rules, and Regulations**

28 U.S.C. §§ 1331, 1338, and 1391 ........................................................................7, 8, 12, 13, 15

28 U.S.C. § 1400................................................................................................................................7

28 U.S.C. § 1404...................................................................................................................1, 10, 11, 13

Fed. R. Civ. P. 12 .............................................................................................................................1

Fᴇᴅ. R. Cɪᴠ. P. 45 .........................................................................................................................15

Defendant 3S-Smart Software Solutions, GmbH ("3S"), a German Company, respectfully moves this Court to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer this action to the Eastern District of Washington pursuant to 28 U.S.C. § 1404(a).   In support of this motion, Defendant has attached the Amended Declaration of Dieter Hess ("Hess Dec.") as Exhibit A.

Defendant submits the following amended motion to acknowledge that it recently discovered fleeting contacts to 3S from this District, the most substantive being two unsolicited software license purchases from within the District, one for €35, nine days before this litigation was filed, and another for €504, earlier in the year.[1]   For the reasons explained below, these minor sales are insufficient in light of 3S's more than €3.1 million in U.S. sales to establish personal jurisdiction or proper venue in this dispute.

I.      **FACTUAL BACKGROUND**

The present action has no connection to the Eastern District of Texas.   Plaintiff Rockwell Automation, Inc. ("Rockwell" or "Plaintiff") "is a corporation organized and existing under the laws of the State of Delaware having its principal place of business in Wisconsin."   Complaint ¶ 1.   Plaintiff chose to file suit in Marshall, Texas against 3S-Smart Software Solutions, GmbH, a company based in Kempten, Germany, accusing 3S of infringing its rights under seventeen United States patents.

---

[1] During investigation subsequent to Defendant's original motion, it became clear that Defendant's ERP software grouped small customers in a single customer account such that it was not possible to identify the originating location of the individual purchases on the summary report.   Once this fact was identified, Defendant evaluated the individual purchases to determine the proper origination location for each, resulting in the newly identified small customers.

A.     **The Parties**

1.     **3S-Smart Software Solutions, GmbH**

3S does not manufacture or distribute consumer products.  3S is a leading business-to-business supplier of computer software for the automation industry. Hess Dec. ¶ 2.  3S's main focus is the development and distribution of CODESYS, a well-known software development system for controller applications, and CODESYS Control, a platform independent runtime system. *Id*.  3S owns and operates the website www.codesys.com which is designed, hosted, and operated from Europe. *Id.* at ¶ 5.  All of the design, development, sales, and marketing of the CODESYS products is based out of Kempten, Germany, with 3S's only subsidiaries located in Peking, China and Milan, Italy. *Id.*

3S has no operations or employees in the Eastern District of Texas, or even within the United States. *Id.* at ¶ 6.  Substantially all of 3S's employees, including technical personnel, management, research and development operations, and marketing are located in Germany.  *Id.*

From 3S's inception through the time of filing of the complaint, 3S's revenue from the United States totals approximately €3.1 million. *Id.* at ¶ 7.  Of the €3.1 million, less than 5%, some €130,000, was from the State of Texas.  *Id.* 3S has no meaningful customers in the Eastern District.  With only two lifetime sales in the Eastern District—one to an individual, and one to a single corporate customer—3S's €539 in total revenue from the Eastern District prior to this action is inconsequential at best. *Id.*  By contrast, more than half of 3S's sales over that same period, nearly €1.7 million, are from two different customers located in the Eastern District of Washington. *Id.*

### 2. Rockwell Automation, Inc.

Plaintiff Rockwell Automation, Inc. ("Rockwell"), "is a corporation organized and existing under the laws of the State of Delaware having its principal place of business in Wisconsin." Complaint ¶ 1. Neither Marshall, Texas nor any other division of the Eastern District of Texas is its home forum. On information and belief, Rockwell has no presence, operations, or employees, in the Eastern District of Texas.

### B. This Litigation

Rockwell accuses 3S of infringing seventeen patents related to software for industrial control applications. Complaint ¶¶ 10–60. Specifically, the patents-in-suit purportedly relate to various technologies associated with programmable logic controllers ("PLC") and the software used with them to support the automation of numerous types of industrial processes, including manufacturing and warehousing activities.

3S makes this motion because litigating in the Eastern District of Washington—where the most relevant third party witnesses, documents, and evidence reside—would resolve the claims at issue more efficiently and conveniently, and the disparity of convenience is so marked as to outweigh the plaintiff's right to choose the forum. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014). "So too here, there is a 'stark contrast in relevance, convenience, and fairness between the two venues.'" *Id*. at 1367.

## II. THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

Federal Circuit law controls personal jurisdiction in patent cases because the issue is "intimately involved in the substance of enforcement of the patent right." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996). The Federal Circuit evaluates

whether an exercise of jurisdiction is proper under the forum state's long-arm statute, as well as the Constitution. *See Viam*, 84 F.3d at 427.   Because Texas's long-arm statute has been interpreted to extend to the limits of due process, the only question is whether Defendant's contacts with the State are sufficient to satisfy the due process clause of the Fourteenth Amendment. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

The Supreme Court has interpreted due process as requiring that the defendant has purposefully established "minimum contacts" with the forum state. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112-13 (1987).  The minimum contacts requirement may be met by a plaintiff showing either "general" or "specific" jurisdiction over a defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).  "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Id.* (*quoting Helicopteros*, 466 U.S. at 414–16).  In the case of corporate defendants, it is proper for a court to exercise general jurisdiction when a corporation is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. ___, 131 S. Ct. 2846, 2851 (2011).

In the alternative, a court may exercise specific jurisdiction over a defendant when the defendant purposefully directed its activities at residents of the forum state, the claim arises out of or relates to the defendant's activities within the forum state, and the assertion of personal jurisdiction is reasonable and fair. *Inamed Corp. v. Kuzmak*, 249 F.3d 1359, 1360 (Fed. Cir. 2001).  A plaintiff bears the burden of proving that minimum contacts exist through the first two

requirements, while a defendant bears the burden of proving that the exercise of jurisdiction would be unreasonable, corresponding to the third requirement. *Elecs. for Imaging v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

If the court finds that the requisite minimum contacts exist, due process further requires that the court decide whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co.*, 480 U.S. at 113.  To make this determination, the court is to balance: (1) the burden upon the nonresident defendant, (2) the interests of the forum state, (3) the plaintiff's interest in securing relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies. *See Viam*, 84 F.3d at 429.

**B.     Analysis**

3S's minimal contacts with the State of Texas fall far short of those required by due process and subjecting 3S, as a foreign defendant, to jurisdiction on such a basis would offend traditional notions of fair play and substantial justice.   Accordingly, this action should be dismissed.

3S is a corporation organized and existing under the laws of Germany, where 3S has its principal place of business. Hess Dec. at ¶ 5.  3S is not a resident of the Eastern District of Texas, nor of any district in the United States.  *Id.*  3S has no distribution network that includes the state of Texas other than the general fact that its software can be obtained from anywhere in the world via the 3S website. *Id.* at ¶ 8.  Between 2003 and the commencement of this action, less than 5% of 3S's sales originated from eight customers within Texas. *Id.* at ¶ 7.

3S has no marketing, development, or manufacturing activities that are conducted within the state. *Id.* at ¶ 8.  Rockwell admits as much in its complaint when the only alleged contact

with the forum is 3S's website, which Rockwell alleges "enables residents of this forum to interact with 3S, facilitate business with 3S, to exchange business information with 3S, form contracts with 3S, and through which 3S offers products . . . for sale in this forum that infringe, induce infringement of, and/or contribute to the infringement of the patents asserted in this litigation." Complaint ¶ 5.  That purported contact is "far from the substantial, continuous, and systematic" contact required to confer general jurisdiction. *Bluestone Innovations Tex. v. Formosa Epitaxy*, 822 F. Supp. 2d 657, 665 (E.D. Tex. 2011).  Accordingly, 3S is not subject to, nor does Rockwell allege, general jurisdiction.

As such, the inquiry turns on whether or not 3S is subject to specific jurisdiction.  In order to be subject to specific jurisdiction, the Fifth Circuit and Federal Circuit both require: (1) purposeful direction of activities toward the forum state or purposeful availment of the privileges of conducting activity in the forum state; (2) the plaintiff's cause of action arising out of or resulting from the defendant's forum-related contacts; and (3) the fair and reasonable exercise of personal jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

3S has not purposefully directed any activities towards Texas, and only a small fraction of its domestic sales have occurred within the state.  Even if sufficient minimum contacts exist, the exercise of jurisdiction over a nonresident defendant must not be constitutionally unreasonable, *i.e.*, the exercise cannot be so unfair in violates notions of fair play and substantial justice. *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 317 (1945).

Considering the factors articulated by the Supreme Court, subjecting 3S to personal jurisdiction in Texas would be constitutionally unreasonable.  Suit in Texas increases the burden on the nonresident defendant by subjecting it to trial in a state it has no connection to, that is thousands of miles away from the evidence that will be at issue in this case.  Texas has very little interest in this dispute as neither party is a resident of Texas, and only a handful of residents are involved in the transactions at issue—a small fraction of the transactions that are the basis for this suit.  Finally, resolution in Texas fails to further the judicial system's interest in efficient resolution of controversies because the parties, and the vast majority of witnesses, are all located outside of the forum and beyond the Court's subpoena power.

Jurisdiction based on 3S's minimal contacts with Texas is even more unreasonable when viewed in light of the fact that 3S is a foreign corporation.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co.*, 480 U.S. at 114.  For the reasons outlined above, this action should be dismissed for lack of personal jurisdiction.

## III.    THE COURT SHOULD DISMISS THIS ACTION FOR IMPROPER VENUE

### A.    Legal Standard

In an action for patent infringement, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990); *see* 28 U.S.C. § 1391(c).  Thus, venue is proper for a non-resident corporate defendant if the defendant is subject to personal jurisdiction in the judicial district where the suit was brought

at the time the action was commenced. *VE Holdings Corp.*, 917 F.2d at 1584; 28 U.S.C. §§ 1391(c), (d).

When venue is challenged, the question of personal jurisdiction is limited to the judicial district where the suit was brought.  Therefore, a plaintiff must demonstrate that the defendant has sufficient minimum contacts with *the district where the suit was brought* to show venue was proper. *See* 28 U.S.C. § 1391(d) ("[I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."); *VE Holdings Corp.*, 917 F.2d at 1583.

## B.      Analysis

This lawsuit has only a fleeting, insubstantial connection to the Eastern District of Texas and this action should be dismissed for improper venue.  Even if 3S committed acts of infringement in the Eastern District of Texas, which it has not, 3S certainly does not have a regular and established place of business in this District.  As explained above, 3S is a corporation organized and existing under the laws of Germany where its principal place of business exists. Hess Dec. at ¶ 5.  3S is not a resident of the Eastern District of Texas.  *Id.*  3S has no meaningful customers within a 100-mile radius of Marshall, nor any that reside within the Eastern District of Texas. *Id.* at ¶ 8.  3S's has only two sales within the Eastern District of Texas, one of a single software license, to an individual, for €35, nine days before this lawsuit was filed, the other to a single corporate customer, for only €504. *Id.*  The only other contact 3S had with the Eastern District at the time of filing were incidental contacts via incoming e-mails, either requesting approval for accounts created on 3S's website, or price inquiries that never matured into a formal

offer for sale or consummated sale.  None of these incidental contacts were the result of direct marketing or solicitation by 3S, nor did they ever elevate to an actual customer relationship.  3S has no targeted sales, marketing, development, or manufacturing activities that are conducted within this District. *Id.*[2]  As discussed above, 3S is not subject to, nor does Rockwell allege, general jurisdiction.

As such, the inquiry turns on whether or not 3S is subject to specific jurisdiction *in this District*.  Rockwell alleges "3S has established minimum contacts with the forum . . . [and] has caused and continues to cause Rockwell injury *in this forum*," based on 3S's website which is accessible from the Eastern District of Texas. Complaint ¶ 8 (emphasis added).   General accessibility of 3S's website alone is insufficient evidence of purposeful availment to establish personal jurisdiction. *See GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (holding that personal jurisdiction could not be based upon "mere accessibility" of an internet site within that forum); *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, Dkt. No. 1354, at *6 (E.D. Tex. Mar. 31, 2014) (rejecting plaintiff's argument that defendant's website is evidence of purposeful availment in the forum because the website "has no features specifically directed to Texas or intended to solicit Texas customers").

3S has not purposefully directed *any* activity toward this district and its only contact is the general accessibility of its website from the forum and the insignificant purchases made by two customers via its website.  3S's revenue from the Eastern District of Texas makes up one hundredth of one percent of its U.S. revenue.  The website does not specifically target Texas

---

[2] The only other contact 3S has had with the Eastern District are incidental contact via incoming e-mails, either requesting approval for an accounts created on 3S's website, or price inquiries that never matured in to a formal offer for sale or consummated sale.  None of these incidental contacts were the result of direct marketing or contact by 3S, nor did they ever elevate to an actual customer relationship.

residents or Texas-based businesses.  3S has not sold any other products to residents of this district, through its website or otherwise.  Without any meaningful sales or otherwise allegedly infringing acts of 3S occurring within the Eastern District, 3S has not purposefully availed itself of the opportunity to conduct business in the Eastern District.  Given 3S's inconsequential contact with the Eastern District at the time the action was commenced, Rockwell's cause of action cannot arise out of 3S's contact with the forum.  Subjecting 3S to jurisdiction in this district based on such fleeting contact would result in the very definition of fundamental unfairness.  Accordingly, venue is improper in this district and this action should be dismissed.

## IV.   ALTERNATIVELY, TRANSFER TO THE EASTERN DISTRICT OF WASHINGTON IS APPROPRIATE

Given this lawsuit's lack of connection to the Eastern District of Texas, this Court should transfer the case to the Eastern District of Washington.  Federal courts in Texas have routinely transferred actions to more convenient venues when a case lacks any special link to the district.[3] *See Nintendo of America*, 756 F.3d at 1366 (granting motion to transfer venue under section 1404(a) where "all of [Defendant]'s identified witnesses reside[d] in the transferee forum or would find travel to and from that venue significantly more convenient; no witness was identified as residing in the Eastern District of Texas").

### A.   Legal Standard

Section 1404(a) serves to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van*

---

[3] *See, e.g.*, *Dataquill v. Apple*, No. 1:13-cv-706 (W.D. Tex. Jun. 14, 2014), *Opperman v. Path*, No. A-12-CA-219 (W.D. Tex. Jan. 15, 2013) (order granting transfer); *Personal Web Techs. v. Apple*, No. 6:12-cv-660 (E.D. Tex. Feb. 12, 2014) (same); *Evolutionary Intelligence v. Apple*, No. 6:12-cv-00783 (E.D. Tex. Aug. 27, 2013) (same); *Adaptix, Inc. v. Apple*, No. 6:13-cv-28 (E.D. Tex. Apr. 11, 2013) (same); *Gonzalez v. Autotrader.com, Inc.*, No. 14-cv-630, 2015 WL 1387858 (E.D. Tex. Mar. 25, 2015) (same).

*Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "The district court has 'broad discretion in deciding whether to order a transfer.'" *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, No. 2:09-CV-105, 2009 WL 3784371, at *1 (E.D. Tex. Nov. 10, 2009) (*quoting Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir.1998)).

In evaluating a transfer request, the first question is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If the answer is yes, the second question is whether, after balancing private and public factors and other relevant considerations, the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

Several guiding principles inform the court's analysis.  For example, the fact that products sold nationwide are accused of infringement does not counsel against transfer from one district in which they are sold to another. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).  Further, a plaintiff's choice of venue, in itself, is not an independent factor in the analysis. *Id.* ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis.").  Indeed, as is the case here, "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011).  Moreover, the central location of a district does not establish that it is the more convenient

forum. *In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009).

A "fundamental principle" is that "litigation should proceed in that place where the case finds its 'center of gravity.'" *Teknekron Software Sys., Inc. v. Cornell Univ.*, No. 93-cv-20122, 1993 WL 215024, at *7 (N.D. Cal. June 14,1993). This principle is of particular significance in patent infringement cases. *Laitram Corp. v. Morehouse*, 31 U.S.P.Q.2d 1697, 1700 (E.D. La. 1994) ("As a general rule, in patent infringement cases 'the preferred forum is that which is the center of gravity of the accused activity.'"); *see also AMP Inc. v. Burndy of Midwest, Inc.*, 340 F. Supp. 21, 25 (N.D. Ill. 1971) ("The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.").

### B.      This Action Could Have Been Filed in the Eastern District of Washington.

This case "might have been brought" in the Eastern District of Washington. That district has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The majority of 3S's sales within the United States giving rise to the claim in this action occurred in Pullman, Washington, making specific jurisdiction, and therefore venue, proper under 28 U.S.C. § 1391(b)(2). Hess Dec. at ¶ 7.

Rockwell has placed 3S's customers at the center of this dispute, alleging that "3S's Customers have been and continue to directly infringe, literally or under the doctrine of equivalents . . . by making, using, offering for sale, selling or importing [products] into the United States . . . [or] by using one or more of the Accused Products to practice the [inventions] claimed." *See* Complaint Counts 1–17. These allegations, along with Rockwell's allegations that 3S has infringed the asserted patents "contributorily and/or by inducement," are fundamentally rooted in the activities of 3S's customers. *Id.* The evidence of the alleged direct and indirect

infringement that is central to Rockwell's case will found be with 3S's customers.   3S's customers in Washington represent the majority of 3S's business in the United States. Hess Dec. at ¶ 7.   Given the breadth of the seventeen patents asserted by Rockwell in this action, it is anticipated that physical examination of infringing equipment will be needed, a process that will be far more convenient in the Eastern District of Washington, and impossible within the Eastern District of Texas.

Venue would have also been proper as 3S would be subject to personal jurisdiction because the sales of the accused product within the district are the basis for this cause of action. 28 U.S.C. § 1391(b)(3).

### C.     The **Private** Factors Strongly Favor Transfer.

Courts also consider the following private factors in transfer motions: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re TS Tech*, 551 F.3d at 1319.

#### 1.     The Bulk of the Relevant Evidence is Maintained in Washington while None Exists in the Eastern District of Texas.

In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer," which, in this case, are 3S and its customers. *In re Genentech*, 566 F.3d at 1345. "Even in the age of electronic discovery, considerations of physical evidence remain meaningful in a § 1404(a) analysis." *Plant Equip. Inc. v. Intrado Inc.*, No. 2:09-cv-395, 2010 WL 2465358, *3 (E.D. Tex. June 16, 2010); *Volkswagen II*, 545 F.3d at 316; *accord In re TS Tech*, 551 F.3d at 1321.   The critical inquiry "is relative ease of access, not absolute ease of access." *In re Toa Technologies, Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013).

Other than two insignificant sales totaling €539, there are no sources of proof in the Eastern District of Texas, thus, the existence of physical sources of proof in the transferee district make that venue more convenient for trial.  3S has no presence in this District beyond the fact that residents of Marshall and this division have access to its website through the Internet. Complaint at ¶ 5; Hess Dec. at ¶ 6.  3S is not aware of any relevant documents located uniquely in Marshall or the Eastern District of Texas. Hess Dec. at ¶¶ 9–11.  To the contrary, the evidence about the accused products and their sales,—*i.e.*, the information most germane to Rockwell's accusations of infringement—is in the Eastern District of Washington. *Id.*

Even if Rockwell could point to some evidence in this District, it would be far outweighed by the much greater volume of evidence and witnesses in the Eastern District of Washington.  Hess Dec. ¶¶ 6–11; *In re Nintendo*, 589 F.3d at 1199–1200.  The ease of access to many more sources of proof in Eastern Washington weighs heavily in favor of transfer.

### 2.      Far More Witnesses Are Subject to Compulsory Process In the Eastern District of Washington Than In this Court.

3S has no employees or meaningful customers within the 100-mile radius of Marshall, Texas. Hess Dec. at ¶ 6.  According to Rockwell's complaint, the patents at issue have apparently been assigned to Rockwell (a Delaware corporation with its principal place of business in Wisconsin), and the inventors of the patents-in-suit are apparently located in Ohio or Wisconsin.  There are only two customers that would be subject to compulsory process in the Eastern District of Texas, their combined dealings with 3S representing a fraction of one percent of the transactions at issue in this case. *Id.* at ¶¶ 8–10.

The largest 3S customer, Schweitzer Engineering Laboratories, is located in the Eastern District of Washington, while there are no meaningful 3S customers within the Eastern District of Texas. Hess Dec. ¶ 7.  3S's largest customer has the broadest experience with the accused

14

products. *Id.* at ¶ 9.  Schweitzer is the 3S customer with the most knowledge of the accused CODESYS product family and likely has the in-depth technical understanding of the functionality of the software and systems for which Rockwell will seek to prove its claims of infringement. *Id.*  Further, Schweitzer most likely has direct experience evaluating and selecting technologies used in this space, and is knowledgeable about 3S's sales processes. *Id.*  Rockwell cannot readily dispute that a high number of relevant third party witnesses exist in the Eastern District of Washington, or that it would be more convenient for these and similarly situated third parties to testify in the district where they live and work.

Schweitzer is illustrative, not exhaustive, of third party witnesses outside 3S's control who are not subject to compulsory process in this Court. FED. R. CIV. P. 45(c)(1)(A), (d)(3).  In contrast, the Eastern District of Washington has "absolute subpoena power" over non-party witnesses in and around Spokane, Washington, whose testimony may prove essential. *In re Hoffmann-La Roche*, 587 F.3d at 1338; FED. R. CIV. P. 45(c)(1)(B).  This factor weighs heavily in favor of transfer.

### 3. The Eastern District of Washington Is a More Convenient and Less Expensive Venue for Witnesses than the Eastern District of Texas.

The convenience of witnesses is perhaps "the most important factor in the transfer analysis." *In re Genentech*, 566 F.3d at 1343 (*citing Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  Under the Fifth Circuit's 100-mile rule, the farther away potential witnesses are from this district, the more this factor weighs in favor of transfer. *Volkswagen II*, 545 F.3d at 317.  Because virtually every witness is located outside of the Eastern District of Texas, many hundreds or thousands of miles away, this factor heavily favors transfer. Even the Plaintiff is not a resident of Texas.

Relevant third-party witnesses including engineers, product managers, marketing personnel, and executives reside and work in the Eastern District of Washington.  Hess Dec. ¶ 9.  The highest volume of sales of the accused 3S products within the United States has occurred within the Eastern District of Washington, while only a pair of inconsequential sales have occurred in the Eastern District of Texas. *Id.* at ¶ 7.  Transfer will reduce the cost and enhance the convenience for these numerous witnesses whose participation is likely to be vital to resolving this case.

The law does not require 3S to identify at this stage which witnesses will prove to be "key" at trial, *In re Genentech*, 566 F.3d at 1343, but 3S nonetheless has made a clear showing that third parties with knowledge of material facts relevant to this case work in, and likely reside in, the Eastern District of Washington.  If this action were to proceed in Texas, many witnesses, including third party witnesses, would have to travel thousands of miles to participate, at significant cost to their regular work and home responsibilities. *Volkswagen I*, 371 F.3d at 205.  The convenience for third party witnesses weighs heavily in favor of transfer.

### 4.    The Other Practical Considerations Favor Transfer.

Trial in the Eastern District of Washington will avoid witnesses traveling across the country to testify, and the jury will be more likely to see and hear from witnesses who reside in Eastern Washington in person, rather than through recorded deposition testimony, as may be required without compulsory process.  The jury will be able to evaluate witnesses' demeanor and credibility more effectively in person than through transcripts or video.  This practical aspect of trial weighs in favor of transfer.

### D.    The <u>Public</u> Factors Strongly Favor Transfer.

The public considerations for transfer motions include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *In re TS Tech*, 551 F.3d at 1319.

First, with respect to local interests, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.  The Eastern District of Texas has no relation to this litigation.  No development, marketing, or targeted advertising of the accused products occurs in the Eastern District of Texas.  Despite 3S having a pair of customers located in the Eastern District of Texas, only one hundredth of one percent of 3S's U.S. sales have occurred there, while the majority of 3S's U.S. sales have occurred in the Eastern District of Washington.

The fact that people all over the world have access to the 3S website, including the citizens of this District, does not establish a localized interest sufficient to weigh against transfer, nor do two sales, representing barely one hundredth of one percent of 3S's U.S. based revenue. Courts universally reject the argument that nationwide sales somehow establish a localized interest in any particular jurisdiction.  This position "stretches logic in a manner that eviscerates the public interest that this factor attempts to capture," and "could apply virtually to any judicial district." *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321; *In re Nintendo*, 589 F.3d at 1198.

The remaining public factors: (1) court congestion and administrative issues; (2) familiarity with governing law; and (3) conflicts of law, also favor transfer.  Both the Eastern District of Texas and the Eastern District of Washington courts are experienced in patent cases,

and are fully capable of resolving the parties' disputes.  One distinguishing fact tips the balance in favor of transfer.  The Eastern District of Texas in general, and the Marshall Division in particular, has an extraordinary number of patent cases pending on its docket, and this number appears to grow daily.  In the 12-month period ending March 31, 2014, 1,554 new patent cases were assigned to the Eastern District of Texas.[4]  This Court has the busiest patent docket in America.[5]  During the same time period, five patent cases were filed in the Eastern District of Washington.[6]  Rockwell will not be prejudiced with a slower time to resolution by transfer; the Eastern District of Washington has a median time to claim construction of 16.3 months, and median time to summary judgment of 25.4 months.[7]  Those times are quicker than the Eastern District of Texas' median times of 20.3 months and 27.5 months, respectively.[8]  The totality of these other public factors thus favors transfer.

## V.    CONCLUSION

For the foregoing reasons, 3S respectfully requests that the Court grant this motion to dismiss for lack of personal jurisdiction or improper venue, or in the alternative, grant the motion

---

[4] U.S. District Court – Civil Cases Filed, by Jurisdiction, Nature of Suit, and District, *available at* http://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2014/03/31.

[5] Jess Davis, *Texas Eastern's IP Dockets Stayed Busy Despite National Drop*, Law360 (Mar. 2, 2015), *available at* http://www.law360.com/articles/626522/texas-eastern-s-ip-dockets-stayed-busy-despite-national-drop.

[6] U.S. District Court – Civil Cases Filed, by Jurisdiction, Nature of Suit, and District, *available at* http://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2014/03/31

[7] Time to Significant Milestones – Eastern District of Washington(Jan. 1, 2008 – Oct. 7, 2015) *available at* https://www.docketnavigator.com/browse/results/1d5f5bec-8d66-5a43-85bc-3ae4d0672798 (attached hereto as "Exhibit B")

[8] Time to Significant Milestones – Eastern District of Texas (Jan. 1, 2008 – Oct. 7, 2015) *available at* https://www.docketnavigator.com/browse/results/ab409b17-b93e-e624-6fd8-2767ed439a42 (attached hereto as "Exhibit C")

to transfer venue to the Eastern District of Washington, the more convenient forum that has numerous and legitimate connections to this action.

Dated:  January 20, 2016          Respectfully submitted,


  /s/ Ann G. Fort

Ann G. Fort
Georgia Bar No. 269995
ann.fort@sutherland.com
Robert R.L. Kohse
Georgia Bar No. 863748
rob.kohse@sutherland.com
**SUTHERLAND ASBILL & BRENNAN, LLP**
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Phone: 713-470-6100
Facsimile: 713-654-1301

*Attorneys for Defendant 3S-Smart Software Solutions GmbH*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that, pursuant to Local Rule CV-7(i), I, Ann G. Fort, counsel for 3S, conferred with Mr. Paul J. Tanck, counsel for Plaintiff, by telephone on November, 10, 2015 regarding 3S's intent to file this motion, and Mr. Tanck stated that Plaintiff is opposed to the relief 3S seeks.

*/s/ Ann G. Fort*
Ann G. Fort

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 20, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

Paul J. Tanck
New York Bar No. NY-4298840
ptanck@chadbourne.com
**CHADBOURNE & PARKE LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Eric Hugh Findlay
Roger Brian Craft
**FINDLAY CRAFT PC**
102 N. College Avenue
Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137

*Attorneys for Plaintiff*
*Rockwell Automation, Inc.*

/s/ Ann G. Fort
Ann G. Fort