**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:15-cv-01543 |
| 3S-SMART SOFTWARE SOLUTIONS, GMBH, | § § § | |
| Defendant. | § § | |

**DEFENDANT 3S-SMART SOFTWARE SOLUTIONS, GMBH'S
MOTION ON THE PLEADINGS THAT THE ASSERTED CLAIMS OF THE '817, '225,
AND '567 PATENTS ARE INVALID FOR FAILURE TO CLAIM PATENTABLE
SUBJECT MATTER**


# **TABLE OF CONTENTS**

I. Introduction ........................................................................................................... 1

II. Issue to be Decided ............................................................................................... 1

III. Background ........................................................................................................... 1

IV. Legal Standards for Summary Judgment and Patent-Ineligible Subject Matter ...... 2

V. Argument .............................................................................................................. 4

    A.    The Parties Agree that Claim Construction is Not Necessary
          for the '817, '225, and '567 Patents ............................................................. 4

    B.    *Alice* Step One: The Asserted Claims of the '817, '225, and '567 Patents
          are All Directed to Abstract Ideas ............................................................... 4

    C.    *Alice* Step Two: The Asserted Claims Fail the Inventive Concept
          Analysis Step ............................................................................................... 6

          1.    The Asserted Claims of the '817 Patent Do Not Contain a
                Sufficient "Inventive Concept" ........................................................ 6

          2.    The Asserted Claims of the '225 Patent Do Not Contain a
                Sufficient "Inventive Concept" ........................................................ 8

          3.    The Asserted Claims of the '567 Patent Do Not Contain a
                Sufficient "Inventive Concept" ........................................................ 9

VI. Conclusion ........................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013)......................................................................................2, 8, 11

*Alice Corp. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014)..............................................................................................3, 4, 6, 7, 9

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
 No. 2012-1673, 558 F. App'x 988 (Fed. Cir. Feb. 26, 2014) ......................................................4

*eDekka LLC v. 3Balls.com, Inc.*,
 No. 2:15-cv-541, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015)...............................................3

*Electric Power Grp., LLC v. Alstom S.A.*,
 No. 2015-1778 (Fed. Cir. Aug. 1, 2016)..............................................................4, 5, 6, 7, 9, 10

*Gonzalez v. InfoStream Group, Inc.*,
 No. 2:14-cv-906, 2016 WL 1643313 (E.D. Tex. April 25, 2016) ..............................................3

*Johnson v. Johnson*,
 385 F.3d 503 (5th Cir. 2004) ......................................................................................................2

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
 66 F. Supp.3d 829 (E.D. Tex. 2014)...........................................................................................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
 132 S. Ct. 1289 (2012)................................................................................................................6

**Statutes**

35 U.S.C. § 101................................................................................................................1, 2, 4, 8, 9, 11

**Other Authorities**

FED. R. CIV. P. 12(b)(6).......................................................................................................................2

FED. R. CIV. P. 12(c) .........................................................................................................1, 2, 3, 11

I. **INTRODUCTION**

Pursuant to Rule 12(c), Defendant 3S-Smart Software Solutions GmbH ("3S") moves to dismiss three of the seventeen patents from Rockwell Automation, Inc.'s ("Rockwell") complaint for failing to claim patent-eligible subject matter under 35 U.S.C. § 101.  By its complaint, Rockwell accuses 3S of infringing, *inter alia*, U.S. Patent Nos. 6,816,817 (Exhibit 1, the "'817 Patent"); 6,978,225 (Exhibit 2, the "'225 Patent"); and 7,716,567 (Exhibit 3, the "'567 Patent").  The Court's analysis of the asserted claims from those patents can begin and end with the threshold issue it must decide as a matter of law: the asserted claims are directed to patent-ineligible subject matter.  Since the Supreme Court's *Alice Corp.* decision, the Federal Circuit and this District have invalidated numerous patents materially indistinguishable from those here – namely, abstract ideas recited at a high level of generality using generic computer components to collect, analyze, and display information.  Receiving data from "components" over a network and displaying that data is conventional technology, and the asserted claims in the '817, '225, and '567 Patents add no technological advance.  Because the asserted claims cover patent-ineligible subject matter, 3S requests that the Court hold the asserted claims of the '817, '225, and '567 Patents invalid as a matter of law and dismiss Rockwell's complaint directed to those three patents.

II. **ISSUE TO BE DECIDED**

Whether the asserted claims of the '817, '225, and '567 Patents are invalid under 35 U.S.C. § 101.

III. **BACKGROUND**

On September 18, 2015, Rockwell filed this lawsuit accusing 3S of infringing seventeen patents, among them the '817, '225, and '567 Patents.  [Dkt. No. 1 at Counts 11, 12, and 16].  The '817, '225, and '567 Patents are closely related.  The application for the '225 Patent was

1

filed as a divisional application of the application for the '817 Patent, and the '817 and '567 Patents were both filed on September 28, 2000. All three patents list common inventor Kevin Retlich, and the specifications for each significantly overlap.

On February 8, 2016, Rockwell served its P. R. 3-1 Disclosure of Asserted Claims and Infringement Contentions, and asserted that 3S allegedly infringes, *inter alia*, claims 21, 25, 26, 27, 30, 31, 32, 33, 34 and 35 of the '817 Patent; claims 1, 3, 4, 5 and 6 of the '225 Patent; and claims 1, 2, 3, 6, 9, 10, 11, 12, 13, 14, 18, 20, 21, 22, 23, 24, 25, 26, 27 and 28 of the '567 Patent.[1]

## IV. LEGAL STANDARDS FOR SUMMARY JUDGMENT AND PATENT-INELIGIBLE SUBJECT MATTER

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "A motion under Rule 12(c) is 'designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Loyalty Conversion*, 66 F. Supp.3d at 834. In deciding a Rule 12(c) motion, the complaint is viewed in the light most favorable to the plaintiff to determine whether it states a valid claim for relief. *Id*.

Here, the issue is whether the '817, '225, and '567 Patents claim statutory subject matter under 35 U.S.C. § 101.

Patent eligibility under Section 101 is an issue of law, but the legal conclusion may contain underlying factual issues. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,

---

[1] 3S submits that Rockwell's identification of asserted claims for the '817, '225, and '567 Patents are properly before the Court on this Rule 12(c) motion because this is a fact "not in dispute" between the parties. *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp.3d 829, 834 (E.D. Tex. 2014).

2

728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Here, there are no material factual disputes that would prevent the Court from deciding 3S's motion pursuant to Rule 12(c).

A two-step process applies to determining whether a claim is directed to patent-eligible subject matter. *Electric Power Grp., LLC v. Alstom S.A.*, No. 2015-1778, slip op. at 5 (Fed. Cir. Aug. 1, 2016) *citing Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). At step one, a court evaluates the claims "on their face" to determine to which "concept" the claims are "drawn." *Alice Corp.*, 134 S. Ct. at 2356. "The 'abstract ideas' category embodies the long-standing rule that an idea of itself is not patentable." *Id*. at 2355 (quotation omitted). For example, in *Gottschalk v. Benson*, the Court rejected patent claims involving an algorithm for converting binary-coded decimal numerals into pure binary form because the patent was "in practical effect . . . a patent on the algorithm itself." 409 U.S. 63, 71-72 (1972). In *Parker v. Flook*, the Court held that a method for updating alarm limits that used a mathematical formula in a catalytic conversion process was a patent-ineligible abstract idea. 437 U.S. 584, 594-95 (1978). *See also Electric Power*, slip op. at 9 (idea for selecting types of information, by content or source, for collection, analysis, and display); *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) (storing and labeling information); *Gonzalez v. InfoStream Group, Inc.*, No. 2:14-cv-906, 2016 WL 1643313 (E.D. Tex. April 25, 2016) (labeling information and searching by those labels); *Alice Corp.*, 134 S. Ct. at 2356 (idea of intermediated settlement using a computer).

At step two, a court "search[es] for an inventive concept-*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp.*, 134 S. Ct. at 2355. The court looks at the invention as described by the claims, rather than the further detail given in the

3

specification. *Id*. at 2359. Appending "conventional steps, specified at a high level of generality" or reciting the use of a "generic computer" does not transform the claimed abstract idea into a patent eligible invention. *Id*. at 2358. Rather, the claim must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea. *Id*. at 2357. Simply stating the abstract idea and adding the words "apply it" is not enough for patent eligibility, nor is limiting the use of the abstract idea to a particular technological environment. *Id*. at 2358.

V. **ARGUMENT**

   A. **The Parties Agree that Claim Construction is Not Necessary for the '817, '225, and '567 Patents**

"There is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, No. 2012-1673, 558 F. App'x 988, 991 n.1 (Fed. Cir. Feb. 26, 2014). On August 9, 2016, the parties met and conferred on the issue of claim terms for construction in the '817, '225, and '567 Patent, and the parties agreed that the Court does not need to construe any claim terms for those three patents.[2]

   B. *Alice* **Step One: The Asserted Claims of the '817, '225, and '567 Patents are All Directed to Abstract Ideas**

Exactly like the recent *Electric Power* case before the Federal Circuit, "[t]he claims in this case fall into a familiar class of claims 'directed to' a patent-ineligible concept . . . on collecting information, analyzing it, and displaying certain results of the collection and analysis." *Electric Power*, slip op. at 6. The '817, '225, and '567 Patents claim methods and systems for collecting and displaying information.

---

[2] Although the parties previously agreed that the preamble of claim 1 of the '567 patent is limiting [Dkt. No. 58], that limitation does not impact the analysis for patent ineligibility under Section 101.

4

The specifications of the '817, '225, and '567 Patents reveal that the purported inventions are directed to abstract ideas. The Summary of the Invention sections for the '817 and '225 Patents state "[t]he present invention provides a real time monitoring approach for industrial control applications . . . . Based upon the stored data from each component . . . a monitoring station accesses information via a data network and compiles user viewable representations of monitored data." ('817 Patent, 1:52-65; '225 Patent, 1:56-2:2). Similarly, the '567 Patent explains "[t]he invention relates more particularly to a <u>technique</u> for allowing representations or presentations of monitored or controlled devices and systems in a variety of languages which are selected and displayed in real time along with the monitored or controlled parameter data." ('567 Patent, 1:8-13) (emphasis added). None of those descriptions amount to anything more than an abstract idea on displaying monitored information.

Analyzing the asserted claims across the three patents confirms that they are directed to abstract ideas. Asserted claims 21, 25, 26, 27, 30, 31, 32, 33, 34 and 35 of the '817 Patent recite variations on methods for storing, sensing, and transmitting data, and generating viewable displays based on the transmitted data. Similar to the '817 Patent, asserted claims 1, 3, 4, 5 and 6 of the '225 Patent recite systems for accessing data over a network and displaying that data to a user. Like the '817 and '225 Patents, asserted claims 1, 2, 3, 6, 9, 10, 11, 12, 13, 14, 18, 20, 21, 22, 23, 24, 25, 26, 27 and 28 of the '567 Patent recite systems and methods for storing, accessing, and displaying data.

All asserted claims of the three patents threaten to preempt the use of basic tools of scientific and technological work because they risk disproportionately tying up the use of basic building blocks of computer systems that transmit and display data, such as computers, monitors, databases, and networks. As the Federal Circuit held in *Electric Power* when finding very

similar claims relate to abstract ideas: "the focus of the claims is on certain independently abstract ideas that use computers and other generic computing technology as tools." *Slip op*. at 8. The claimed systems and methods of the '817, '225, and '567 patents – all of which rely on computer and other generic computing technology as tools – are so abstract as to cover any and all uses of the underlying abstract ideas in the field of information retrieval and data display. Thus, the asserted claims of the three patents fail step one of the *Alice Corp.* analysis, and a step two analysis must be performed.

### C. *Alice* Step Two: The Asserted Claims Fail the Inventive Concept Analysis Step

Because the asserted claims are directed toward an abstract idea, the Court must next determine whether an "inventive concept" exists that is sufficient to transform the claims into patent-eligible subject matter. *Alice Corp.*, 134 S. Ct. at 2355. Such transformation requires more than simply stating the abstract idea "while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012). As explained below, no inventive concept exists to transform the claims into patent-eligible subject matter because the "claims in this case do not even require a new source or type of information, or new techniques for analyzing it." *Electric Power*, slip op. at 9.

1. The Asserted Claims of the '817 Patent Do Not Contain a Sufficient "Inventive Concept"

Asserted claim 21 is representative of the asserted independent claims of the '817 Patent:

> 21. A method for monitoring operational parameters of a plurality of networked electrical component, the method comprising the steps of:
> storing in a memory circuit of each component identity data representative of an identity of the respective component in the system;
> sensing operational parameters of each component and processing the sensed parameters in the respective component;
> transmitting the sensed parameters and the identity data of the respective component to a monitoring station; and
> generating a series of user viewable monitoring displays of the parameters by component based upon the sensed parameters and the identity data,

6

>the monitoring displays including graphical presentations of parameter levels.

Turning to step two of the *Alice Corp.* test, the above claim recites no inventive concept sufficient to ensure that the claim amounts to significantly more than a patent on a fundamental concept itself. The claim generally recites storing, sensing, and transmitting data types from electrical components, and generating a series of user viewable displays "based upon" that data – steps deemed insufficiently inventive as a matter of law. *Electric Power*, slip op. at 7 ("we have treated collecting information, including when limited to particular content . . . as within the realm of abstract ideas. . . . And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information . . . is abstract")(collecting cases). Furthermore, the claim discloses no technological advance in systems integration; it simply recites the generic: "electrical components," "a memory circuit," "a monitoring station," and "a series of user viewable monitoring displays." Those high-level generalities utterly fail to disclose any technological advance. The claim essentially states the idea of collecting and displaying data, "while adding the words 'apply it with a computer,'" which legally is deficient under *Alice Corp.*, 134 S. Ct. at 2358; *see, e.g., id.*, at 2355-60 (claims reciting "data processing system," "communications controller," and "data storage unit" were not patentable).

Indeed, the claim is remarkably similar to the invalidated claims in *Electric Power*, where the Federal Circuit affirmed summary judgment of non-patentability. There, the Federal Circuit found claims reciting methods and systems for monitoring performance of multiple data sources that included "receiving" data, "detecting and analyzing events," and "displaying" results "from different categories of data and the derived metrics in visuals" were not directed to patent-eligible subject matter. In so holding, the Court recognized:

7

> Though lengthy and numerous, the claims do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology. The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101.

(Slip op. at 2).

The remaining asserted claims of the '817 Patent also claim ineligible subject matter. The other independent method claims 27, 33, 34, 35, and 36 recite performance of the same basic process with only minor differences in terminology and should "fall together" with claim 21. *Accenture*, 728 F.3d at 1344. The asserted dependent claims 25, 26, and 30-32 also provide no meaningful limits on the claims. Instead, those dependent claims merely recite additional generic computer terms or concepts, all of which are patent-ineligible.

Therefore, asserted claims 21, 25-27, and 30-36 of the '817 Patent fail under Section 101 because they define an information-based result without being limited to an inventive means of achieving that result.

   2. The Asserted Claims of the '225 Patent Do Not Contain a Sufficient "Inventive Concept"

The only asserted independent claim of the '225 Patent recites:

> 1. A system for monitoring a plurality of electrical components, the system comprising:
>    a network link for accessing parameter data from a plurality of networked electrical components; and
>    a monitoring station configured cyclically to access the parameter data via the network link and to generate a user viewable representation of the parameter data including a plurality of virtual meters displaying current and historical levels of selected parameters for each component; and
>    a database accessible by the monitoring station, the database including component data descriptive of the components, and wherein the user viewable representation includes descriptive indicia based upon the component data.

8

Turning to step two of the *Alice Corp.* test, claim 1 recites no inventive concept sufficient to ensure that the claim amounts to significantly more than a patent on the fundamental concept itself. The claim generally recites accessing data from a plurality of networked components, generating a display of parameters for each component, and storing data descriptive of the components in a database. But, the claim discloses no technological advance in systems integration; it simply recites generic "a network link," "a monitoring station," and "a database" for transmitting, storing, and displaying data to a user. Those high-level generalities fail to disclose any technological advance. *Electric Power*, slip op. at 9. The claim effectively states the idea of collecting and displaying data, "while adding the words 'apply it with a computer,'" which is deficient under *Alice Corp.*, 134 S. Ct. at 2358; *see, e.g., id.* at 2355-60 (claims reciting "data processing system," "communications controller," and "data storage unit" were not patentable).

The remaining asserted claims of the '225 Patent, all of which depend from claim 1, also claim ineligible subject matter by merely reciting additional generic computer concepts.

For the forgoing reasons, asserted independent claim 1, and dependent claims 3, 4, 5, and 6 of the '225 patent fail under Section 101 because they define an information-based result without being limited to an inventive means of achieving that result.

### 3. The Asserted Claims of the '567 Patent Do Not Contain a Sufficient "Inventive Concept"

In the '567 Patent, claim 9 is representative of the asserted independent claims:

> 9. An industrial control and monitoring system comprising:
> a plurality of control and monitoring components configured to control or monitor application of electrical power to a load, and including at least data identifying the components stored in the respective components;
> a data network coupled to the components for accessing parameter and identity data from the components;
> a database including component data descriptive of the components; and a plurality of language fields including textual labels for component data presentations translated into a plurality of languages;

9

> a monitoring station coupled to the data network and configured to access the parameter data and the identifying data from the components; and
> a plurality of monitoring representations built in real-time based upon the identifying data and viewable on the monitoring station and including data about components and component status parameters based upon the parameter data, the representations including textual labels from the database in a desired language from the plurality of languages for display in the monitoring screens.

Scrutinizing the claim elements "more microscopically" reveals "nothing sufficient to remove the claims from the class of subject matter ineligible for patenting." *Electric Power*, slip op. at 8. The claims merely invoke generic computerized components: "control and monitoring components," "a data network," "a database," "a monitoring station," and "a plurality of monitoring representations," which do not require any nonconventional components, or even a non-generic arrangement of known, conventional pieces. Nothing in the patent specification contains any indication that the claimed components are anything but readily available. Additional claim limitations for monitoring representations built "in real-time" and the use of "textual labels" in "a desired language" to display information cannot transform the abstract process of data collection and display into patentable subject matter. *Electric Power*, slip op. at 10-11 (the patent-ineligible claims "do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology;" "merely requiring the selection and manipulation of information–to provide a humanly comprehensible amount of information useful for users. . . by itself does not transform the otherwise-abstract processes of information collection and analysis.") The claim merely calls for the collection, analysis, and display of information on a generic set of computer components.

The remaining asserted claims of the '567 Patent also claim ineligible subject matter. The remaining two independent claims 1 and 20 recite performance of the same basic process

with only minor differences in terminology and should "fall together" with claim 9. *Accenture*, 728 F.3d at 1344. The asserted dependent claims 2, 3, 6, 10-14, 18, 19, and 21-28 provide no meaningful limits on the claims. Instead, the asserted dependent claims merely recite additional generic computer terms or concepts. Therefore, the asserted claims of the '567 Patent are directed to patent-ineligible subject matter.

For the forgoing reasons, asserted claims 1, 2, 3, 6, 9, 10, 11, 12, 13, 14, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28 of the '567 patent fail under Section 101 because they define an information-based result without being limited to an inventive means of achieving that result.

## VI.     CONCLUSION

For the foregoing reasons, 3S respectfully requests that the Court grant its motion for judgment on the pleadings under Rule 12(c) and find the asserted claims of the '817, '225 and '567 Patents invalid for failure to claim patent-ineligible subject matter under 35 U.S.C. § 101.

This 9th day of August, 2016.

        Respectfully submitted,

        */s/ Ann G. Fort*
        Ann G. Fort (GA Bar No. 269995)
        Robert R. L. Kohse (GA Bar No. 863748)
        Walter S. Freitag (GA Bar No. 510393)
        Sutherland Asbill & Brennan LLP
        999 Peachtree Street, NE
        Suite 2300
        Atlanta, GA 30309
        Phone:  404-853-8000
        Fax:  404-853-8806
        Email:  ann.fort@sutherland.com
                rob.kohse@sutherland.com
                walter.freitag@sutherland.com

        Jason D. Mazingo
        The Mazingo Firm, PC
        305 South Broadway
        Suite 404
        Tyler, TX 75702
        Phone: 903-630-7123
        Fax:  903-218-7849
        Email:  jason@mazingofirm.com

        ***ATTORNEYS FOR DEFENDANT***
        ***3S-SMART SOFTWARE SOLUTIONS, GMBH***

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## 35 U.S.C. § 101 MOTION PRACTICE ORDER

__X__    The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

_____   The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Ann G. Fort*
Ann G. Fort
Lead Counsel for Movant

**CERTIFICATE OF SERVICE**

      This is to certify that on the 9th day of August, 2016, the foregoing document was filed electronically with the Court's ECF system, which caused an electronic copy to be served on all counsel of record.

                                                   */s/ Ann G. Fort*
                                                   Ann G. Fort