**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., <br><br> Plaintiff / Counterclaim-Defendant, <br><br> v. <br><br> 3S-SMART SOFTWARE SOLUTIONS, GMBH, <br><br> Defendant / Counterclaim-Plaintiff. | Case No. 2:15-cv-01543 <br> **JURY TRIAL DEMANDED** |

**3S'S OPPOSED MOTION FOR LEAVE TO FILE ITS SECOND AMENDED ANSWER
AND COUNTERCLAIMS TO ROCKWELL'S COMPLAINT**

Defendant and Counterclaim-Plaintiff 3S-Software Solutions, GmbH ("3S") hereby moves the Court for leave to file its Second Amended Answer and Counterclaims in the instant case ("Rockwell I") pursuant to Federal Rule of Civil Procedure 15(a). Per the Docket Control Order in this lawsuit (Dkt. No. 28), the time to amend pleadings as a matter of right has passed and 3S hereby seeks leave to file amended counterclaims asserting, among other Standard Setting Organizations ("SSO") related counts, that Plaintiff Rockwell Automation, Inc. ("Rockwell") violated Section 2 of the Sherman Act (15 U.S.C. § 2).

3S's Second Amended Answer and Counterclaims are submitted separately, but concurrently with this motion, pursuant to Local Rule CV-7(k).

Last week, on August 22, 2016, 3S filed its Answer and Counterclaims to Rockwell's August 4, 2016 related lawsuit filed as case no. 2:16-cv-869 ("Rockwell II"). 3S's recently filed counterclaims in Rockwell II are *identical* to 3S's proposed Second Amended Answer and Counterclaims that are the subject of this motion. 3S's counterclaims are directed to patents

1

Rockwell has asserted in both this case and Rockwell II. 3S requests leave to file its Second Amended Answer and Counterclaims in this lawsuit to conform to the defenses and counterclaims filed in Rockwell II. This will ensure that the patents in this suit that form the basis of Rockwell's antitrust violations are consistently and efficiently interpreted and applied across both cases with respect to the issues of infringement, invalidity, unenforceability, and Rockwell's SSO-related common law and federal antitrust liability. 3S's counterclaims filed in Rockwell II, as well as the identical proposed Second Amended Counterclaims here, allege that Rockwell's conduct arising from both cases it filed against 3S together establish Rockwell's liability under the Sherman Antitrust Act and common law claims arising from Rockwell's SSO-related activities.

Importantly, Rockwell will not suffer prejudice by 3S's proposed Second Amended Answer and Counterclaims. 3S's defenses and counterclaims rely on the same facts regarding Rockwell's interactions with SSOs that have been central to 3S's original defenses and counterclaims filed at this lawsuit's inception; namely, (1) Breach of contracts, (2) Promissory Estoppel, and (3) Breach of Implied covenants, between Rockwell, the SSOs, SSO members, and persons implementing the SSO standards. (Dkt. No. 18). Furthermore, fact discovery remains open, and the parties have not commenced taking party depositions.[1]

3S's present request to amend is not subject to any legitimate objection that it is unduly delayed, brought in bad faith, or futile.

---

[1] The sole party deposition taken thus far is Rockwell's single Rule 30(b)(6) deposition of 3S via its CEO Dieter Hess with respect to 3S's pending Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer Venue. 3S anticipates that Dieter Hess will be deposed again in this litigation on issues other than jurisdiction and venue.

The proposed amendments will also conserve judicial resources because, among other reasons, they render moot Rockwell's pending Motion to Dismiss 3S's originally Amended Counterclaims (Dkt. No. 50).

Finally, 3S notes that the defenses and counterclaims between this action and Rockwell II are presently not identical because 3S filed its SSO-related counterclaims as a matter of right in Rockwell II. By granting this motion, the issues of law and fact between the two cases will be common again, as originally represented in 3S's motion to consolidate. (Dk. No. 73).

## I.     Procedural Status and Factual Background

On September 18, 2015, Rockwell filed this first lawsuit ("Rockwell I") against 3S alleging infringement of seventeen (17) patents owned by Rockwell. 3S filed its original Answer and Counterclaims against Rockwell on February 8, 2016 (Dkt. No. 18). 3S filed amended counterclaims as a matter of right, on February 29, 2016 (Dkt. No. 25) pleading additional detail regarding its counterclaims. The Court entered its Docket Control Order for this case on March 9, 2016 (Dkt. No. 28). On April 22, 2016, Rockwell moved to dismiss 3S's counterclaims for Breach of Contracts, Promissory Estoppel, and Breach of Implied Covenants (Dkt. No. 50). Briefing on that motion was completed on June 3, 2016. The parties attended the claim construction hearing on August 26, 2016, and jury selection is currently scheduled to begin on March 6, 2017.

On August 4, 2016, Rockwell filed a second lawsuit against 3S alleging that the same 3S CODESYS software versions infringe four (4) additional Rockwell-owned patents. *Rockwell Automation, Inc. v. 3S-Smart Software Solutions*, GmbH, No. 2:16-cv-869 (E.D. Tex.) ("Rockwell II"). On August 16, 2016, 3S filed a motion to consolidate Rockwell II with this case, and proposed a modest six-week modification to the scheduling order in this case to accommodate the four additional Rockwell patents asserted in Rockwell II. (Dkt. No. 73). On

August 22, 2016, 3S filed its answer and counterclaims in Rockwell II. 3S's counterclaims in Rockwell II are identical to, and allege the same facts contained in, the counterclaims that are the subject of the instant motion for leave.

## II. Justice Requires the Court to Grant the Motion for Leave to File 3S's Second Amended Answer and Counterclaims

### A. Legal Standards

Federal Rule of Civil Procedure 15 provides that without an opposing party's consent, and after a 21 day response period to a pleading has passed, "a party may amend the party's pleading only with…the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(a) "requires the trial court to grant leave to amend 'freely.'" *Lyn-Lea Travel Corp. v. Am. Airlines, v. Harry L. Laws Co., Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). The Supreme Court has held, "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). While leave to amend "is by no means automatic," *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir.), *cert denied*, 454 U.S. 1098 (1981), "the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel*, 283 F.3d at 286.

District courts consider a variety of factors to determine whether justice supports granting leave to amend a complaint, "such as undue delay, bad faith, undue prejudice to the opposing party by allowing the amendment, and futility of the amendment." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991) (referring to *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 1990)). Without one of the above

4

*Foman* factors providing a substantial reason to deny leave to amend, a court's refusal to grant such leave constitutes an abuse of discretion. *United States ex rel. Adrian v. Regents of University of California,* 363 F.3d 398, 403 (5th Cir. 2004); *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services,* 925 F.2d 866, 874 (5th Cir. 1991) (Where there exists no "substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").

### B. Rockwell will not be Prejudiced by the Court Granting 3S's Motion for Leave to File its Second Amended Answer and Counterclaims

3S's Second Amended Answer and Counterclaims add allegations directed to 3S's original amended counterclaims for Breach of Contracts, Promissory Estoppel, and Breach of Implied Covenants, and also add an antitrust counterclaim for Unlawful Monopolization. 3S's Second Amended Counterclaims allege that Rockwell's conduct induced standards organizations to promulgate various widely followed technology standards that incorporate Rockwell's proprietary technology as an essential element, while intentionally failing to disclose to the standards organizations that Rockwell owned patents that are essential to such standards. Rockwell also falsely promised that it would provide licenses to any standards-essential patents at no cost or at no more than FRAND terms, and Rockwell has reneged on its commitments to license its standards-essential patents on such terms. *See, e.g.*, paragraphs 277-280 of 3S's Second Amended Answer and Counterclaims, filed concurrently herewith.

The operative facts that are dispositive of 3S's new SSO-related counterclaims have already been made central to this litigation. As soon as 3S joined the litigation, its SSO-related counterclaims filed in February 2016 for Breach of Contracts, Promissory Estoppel, and Breach of Implied Covenants, placed Rockwell's interactions with various SSOs at issue, including (1) Rockwell's membership in various SSOs, (2) the subject and scope of SSO intellectual property

policies, (3) Rockwell's role as an SSO member helping to promulgate standards that included proprietary technology, (4) patents asserted in this litigation being essential to the standards promulgated by the SSOs in which Rockwell was active, and (5) that by bringing this litigation, Rockwell violated various SSO intellectual property policies. *See, e.g.*, paragraphs 19-48 of 3S's Amended Answer and Counterclaim (Dkt. No. 25) and paragraphs 19-35 of 3S's initial Answer and Counterclaims (Dkt. No. 18). Accordingly, Rockwell has been on notice for months that its interactions with and representations to SSOs, the SSOs' intellectual property policies, and the essential nature of the asserted patents to the standards promulgated by these SSOs are central to 3S's counterclaims. The addition of an antitrust counterclaim presents many of the same factual issues, and Rockwell cannot meaningfully allege undue prejudice from 3S's newly amended SSO-related counterclaims.

Rockwell also is not prejudiced because fact discovery remains open. Although the parties have produced documents, significant document productions remain outstanding, and no depositions of any Rockwell witnesses have taken place. Accordingly, the newly pled SSO-related counterclaims will not require any duplication of discovery that has already taken place. Rockwell's documents relevant to the antitrust counterclaim should have already been produced as relevant to 3S's existing counterclaims; the deadline for substantial completion of document production was July 15, 2016. (Dkt. Mo. 28 at 3.)

Any additional discovery solely relevant to the antitrust counterclaim will not significantly expand the scope of discovery already at issue in this case, and it therefore will not be unduly prejudicial to Rockwell—particularly given the significant scope of this litigation Rockwell has already chosen to pursue by alleging infringement of 17 patents. Rockwell should also not be heard to suffer prejudice in light of its decision to delay asserting four additional

patents against 3S in Rockwell II—including asserting at least one patent that is the parent to a child patent asserted in this case. Further, Rockwell will not be prejudiced in light of the fact that 3S's proposed Second Amended Answer and Counterclaims have already been filed—and will be at issue—in Rockwell II.

### C. 3S has not Unduly Delayed its Second Amended Counterclaims

3S's Second Amended Answer and Counterclaims are timely. 3S has diligently researched and investigated the relevant facts and law to meet its Fed. R. Civ. P. 11 obligations before preparing its SSO-related counterclaims, including the addition of a Sherman Act antitrust counterclaim, and filing this motion.

Relevant facts and events pertinent to 3S's SSO-related counterclaims have been developing since the time 3S filed its originally amended counterclaims in this case. For example, 3S and Rockwell have been in communication with the OPC Foundation, where both 3S and Rockwell are members. The OPC Foundation has been investigating the essentiality of each of Rockwell's asserted patents, and has indicated that one or more of the asserted patents are indeed essential to their relevant standard—including the patents that 3S's counterclaims assert are OPC standard essential. 3S's counterclaims allege that several patents Rockwell has asserted in both this lawsuit and Rockwell II are standard essential.

3S's diligence is further evidenced by its ongoing discovery efforts with Rockwell as well as third parties. In addition to its requests to Rockwell—which Rockwell continues to resist—3S has served subpoenas on several SSOs, including the IEC, the IEEE, NEMA, the ODVA, and PLCOpen—seeking facts relevant to 3S's counterclaims. By their very nature, 3S's counterclaims involve an information asymmetry between Rockwell and 3S, an asymmetry that Rockwell has capitalized on and 3S has been working diligently to overcome.

Further, as stated above, fact discovery remains open, and sufficient time exists to take discovery on issues pertaining to the SSO-related counterclaims before fact discovery closes. Additionally, should the Court grant 3S's motion to consolidate this litigation with Rockwell II, and fact discovery is adjusted slightly to accommodate four additional Rockwell patents from Rockwell II, any objection concerning timeliness is additionally rendered moot.

### D. Granting 3S's Motion for Leave Would Conserve Judicial Resources

On April 22, 2016, Rockwell moved to dismiss 3S's originally amended SSO-related counterclaims for Breach of Contracts, Promissory Estoppel, and Breach of Implied Covenants for failing to adequately plead all elements of those defenses. (Dkt. No. 50). 3S reaffirms and stands behind its opposition to Rockwell's motion (Dkt. No. 52). However, as discussed above, the alleged relevant facts supporting 3S's antitrust counterclaim add to—and have significant overlap with—the relevant facts of 3S's originally amended SSO-related counterclaims for Breach of Contracts, Promissory Estoppel, and Breach of Implied Covenants. The extensive additional information alleged in 3S's antitrust counterclaim therefore also informs and expands upon the related three counterclaims identified above. 3S continues to stand by the sufficiency of its first amended counterclaim even after Rockwell's motion to dismiss, and 3S does not admit that any necessary information was omitted from that pleading. But if the Court grants leave to file 3S's Second Amended Answer and Counterclaims, Rockwell would be provided with the additional information Rockwell claimed was necessary to support 3S's existing counterclaims, and Rockwell's pending motion to dismiss those counterclaims therefore would become moot. (Dkt. No. 50).

### E. All Factors Weigh in Favor of Granting Leave to Amend

In addition to the lack of undue delay and prejudice, there is a complete absence of any other "substantial reason" for denying leave to amend. *Lyn-Lea Travel,* 283 F.3d at 286. For example, there are no facts indicating anything akin to "repeated failure to cure deficiencies with prior amendment, bad faith, dilatory motive and futility of amendment." *Union Planters Nat'l Leasing* v. *Woods,* 687 F.2d 117, 121 (5th Cir. 1982). The lack of any substantial reason of any kind for denying leave compels a finding that 3S should be allowed to file its Second Amended Answer and Counterclaims and add its antitrust counterclaim against Rockwell. *See Farias,* 925 F.2d at 874 ("Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.") (quoting *Carson v. Policy,* 689 F.2d 562, 584 (5th Cir. 1982)).

### III. Conclusion

For all of the above reasons, this Court should grant 3S leave to file its Second Amended Answer and Counterclaims, which are submitted concurrently with this motion.

Date:   August 29, 2016                                   Respectfully submitted:

*/s/ Paul J. Skiermont*
Paul J. Skiermont
Texas Bar No. 24033073
Alexander E. Gasser
Wisconsin Bar No. 1022659
Steven W. Hartsell
Texas Bar No. 24040199
Steven J. Udick
Texas Bar No. 24079884
**SKIERMONT DERBY LLP**
2200 Ross Avenue, Suite 4800W
Dallas, TX 75201
Phone: 214-978-6600
Email: paul.skiermont@skiermontderby.com
             agasser@skiermontderby.com
             shartsell@skiermontderby.com
             sudick@skiermontderby.com

Ann G. Fort
Georgia Bar No. 269995
Robert R.L. Kohse
Georgia Bar No. 863748
Walter S. Freitag
Georgia Bar No. 510393
**SUTHERLAND ASBILL & BRENNAN, LLP**
999 Peachtree St. NE Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
Email: ann.fort@sutherland.com
             rob.kohse@sutherland.com
             walter.freitag@sutherland.com

Jason Dwain Mazingo
**The Mazingo Firm, PC**
102 North College Avenue, Suite 1033
Tyler, TX 75702
Phone: 903-630-7123
Fax: 903-218-7849
Email: jason@mazingofirm.com
*Attorneys for 3S-Smart Software Solutions, GmbH.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 29, 2016, a true and correct copy of the foregoing document, 3S'S OPPOSED MOTION FOR LEAVE TO FILE ITS SECOND AMENDED ANSWER AND COUNTERCLAIMS TO ROCKWELL'S COMPLAINT, was served on counsel of record via the court's regular ECF filing procedures.

                                                      */s/ Paul J. Skiermont*
                                                      Attorney

**CERTIFICATE OF CONFERENCE**

I certify that counsel for 3S has conferred with counsel for Rockwell. On August 23, 2016, counsel for 3S, Ann Fort contacted counsel for Rockwell, Paul Tanck and Greg Carbo, and requested Rockwell's consent to amend 3S's affirmative defenses and counterclaims to conform to the pleadings in 2:16-cv-00869. On August 25, 2016, Rockwell's counsel Greg Carbo, informed 3S's counsel that Rockwell will not consent to 3S's motion. The Court should therefore consider this motion as opposed by Rockwell.

                                                      */s/ Paul J. Skiermont*
                                                      Attorney