## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC. | § | |
| | § | |
| v. | § | Case No. 2:15-cv-01543-JRG-RSP |
| | § | |
| 3S-SMART SOFTWARE SOLUTIONS, | § | |
| GMBH | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant 3S-Smart Software Solutions, GmbH's ("3S") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, To Transfer (Dkt. No. 11, Dkt. No. 15). 3S requests dismissal for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3); 3S alternatively requests transfer to the Eastern District of Washington under 28 U.S.C. § 1404(a). For the reasons explained below, 3S's Motion to Dismiss is **DENIED AS MOOT** and its Alternative Motion to Transfer is **DENIED**.

## I.  FACTUAL BACKGROUND

Plaintiff Rockwell Automation, Inc. ("Rockwell") filed suit against 3S on September 18, 2015, accusing 3S of infringing seventeen patents related to software for industrial control applications. Dkt. No. 1 ¶¶ 10-60. Rockwell is a Delaware corporation with its principal place of business in Milwaukee, Wisconsin. Dkt. No. 1 at 1. Rockwell's Architecture and Software operating segment is headquartered in Mayfield Heights, Ohio, and its Control Products and Solutions operating segment is headquartered in Milwaukee, Wisconsin. Dkt. 31-62 at 23. Thirty-one inventors are named on the asserted patents, and those who remain employed by Rockwell reside primarily in Mayfield Heights, Ohio, or Milwaukee, Wisconsin. *See* Dkt. 31-54 at 1-2.

1

Defendant 3S is a German Corporation that supplies computer software for the automation industry. Dkt. 15 at 2. Substantially all of 3S's employees, including technical personnel, reside in Germany. Dkt. No. 15-2 ¶ 6. 3S's management, research and development operations, and marketing departments are also located in Germany. *Id.* According to 3S's CEO, 3S's business is led from Germany, and the bulk of corporate decisions are made there. *Id.*

Rockwell bases its Complaint on both direct and indirect infringement by 3S and its customers. At least one large 3S customer, Schweitzer Engineering Laboratories, is located in Pullman, Washington. Schweitzer's National Sales and Customer Service Director is located in Fair Oaks Ranch, Texas, outside San Antonio. Dkt. 31-36 at 1-2. Other 3S customers have sales and training offices throughout Texas. *See, e.g.*, Dkt. 31-41 at 1.

3S first filed its Motion to Dismiss and Alternative Motion to Transfer on November 11, 2015, Dkt. No. 11, and later filed an amended Motion upon discovering certain 3S contacts with this district, Dkt. No. 15.

## II. PERSONAL JURISDICTION AND VENUE

The Court turns first to 3S's request for dismissal. 3S filed its amended Motion on January 20, 2016 (Dkt. No. 15), requesting dismissal for both lack of personal jurisdiction and improper venue. 3S later answered Rockwell's Complaint on February 8, 2016 (Dkt. 18) and in that pleading acknowledged that it "established minimum contacts with the District that are sufficient to establish personal jurisdiction over 3S, *id.*, and that "3S does not contest that venue may lie in this District as a technical matter . . . ." *Id.* ¶ 8. Rockwell therefore argues that 3S's request for dismissal is moot. Dkt. 31 at 1. 3S did not, however, clearly withdraw the Motion to Dismiss, and, indeed, titled its Reply filed on April 16, 2016, as a "Reply in Support of

Defendant's Amended Motion to Dismiss . . . ." *See* Dkt. 43. Regardless of whether 3S intended

to maintain its Motion to Dismiss, however, 3S is "bound by admissions in [its] pleadings, and

facts admitted in pleadings are no longer at issue." *Pace Concerts, Inc. v. Smith*, 990 F.2d 626

(5th Cir. 1993). 3S's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is

therefore **DENIED AS MOOT**.

## III.   TRANSFER

What remains is 3S's alternative request for transfer. 3S requests transfer to the Eastern

District of Washington because 3S allegedly has a disproportionate connection to that district.

### A.  Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a). The first step in a court's transfer

analysis is deciding "whether the judicial district to which transfer is sought would have been a

district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th

Cir. 2004) ("*In re Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the

convenience of parties and witnesses and the interests of particular venues in hearing the case.

*See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re

Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d

1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of

proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost

of attendance for willing witnesses; and 4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589

F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]" and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Doc. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**B.  Analysis**

Defendant argues, and Plaintiff does not contest, that this case could have been filed in the Eastern District of Washington, satisfying the first prong of the *Volkswagen I* test. Dkt. No. 15 at 12-13. The question is whether 3S has carried its burden of showing that the Eastern District of Washington is clearly the more convenient venue.

   *1.  Private Interest Factors*

   The first group of *Volkswagen I* factors relate to the convenience of the venue to the parties and potential witnesses. With respect to the first factor regarding the location of potential sources of proof, 3S acknowledges that in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer," *i.e.*, 3S and its customers. Dkt. 15 at 13 (quoting *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). According to 3S, however, "there are no sources of proof in the Eastern District of Texas" other than "two insignificant sales." *Id.* at 14. 3S's CEO testified that there is indeed a large discrepancy between accused product sales that have occurred in Texas and sales that have occurred in the Eastern District of Washington. *See* Dkt. 15-2 ¶ 7.

   Though such a discrepancy may exist, Rockwell's Complaint alleges more than infringing sales. Dkt. 1 at 6-7. More importantly, evidence of a sale may not necessarily be kept at the location where the sale occurred. 3S acknowledges that "[a]ll of the design, development, sales, and marketing of the [accused] products is based out of Kempten, Germany." Dkt. 15 at 2. Indeed, 3S's CEO failed to identify any specific witnesses or sources of proof (such as sales documents) located in the Eastern District of Washington. *See* Dkt. No. 31-30 at 164:20-167:5. Moreover, 3S stresses that Schweitzer is a significant 3S customer located in the Eastern District of Washington, *see*, *e.g.*, Dkt. 15 at 14-15, but as Rockwell identifies, Schweitzer's National Sales and Customer Service Director is located outside San Antonio, Texas, far closer to this forum than the transferee forum. Dkt. 31-36 at 1-2.

   Numerous other potential sources of proof are likely closer to this district than the Eastern District of Washington. Schweitzer, for example, appears to have held training seminars teaching the accused technology in and near this district, *see* Dkt. 31-33 at 1, and other 3S

5

customers have potentially-relevant sales and training offices near this district in Texas, *see, e.g.*, Dkt. 31-41 at 1. Rockwell highlights witnesses that are more accessible from this district. The attorney that prosecuted the patents-in-suit, for example, works in Houston. Dkt. No. 31-56 at 1. This witness may be significant because 3S alleges that Rockwell failed to comply with its duty to disclose material information to the patent office during prosecution. *See* Dkt. 25 ¶ 256. The inventors of the patents-in-suit all appear to be roughly twice as close to this district as they are to the Eastern District of Washington. *See* Dkt. 31-54. Finally, a substantial portion of Rockwell's evidence regarding development of the alleged invention may be located at Rockwell's headquarters in Mayfield Heights, Ohio, or Milwaukee, Wisconsin, both of which are closer to this district than to the Eastern District of Washington. *See* Dkt. 31-62 at 23. On balance, the Court finds that the first *Volkswagon I* factor weighs against transfer.

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagon II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the Court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

Neither the Eastern District of Washington nor this district has absolute subpoena power over all relevant witnesses. Though 3S argues that customers and employees of Schweitzer would constitute a large number of witnesses, 3S's CEO could not identify any specific witness located in the Eastern District of Washington during his deposition. Dkt. No. 31-30 at 164:20-167:5. 3S's CEO also acknowledged that Schweitzer personnel would be irrelevant to certain accused activity because Schweitzer does not sell technology related to that activity. *See* Dkt. 31-29 at 40:14-19. Rockwell, by contrast, identifies several individuals within this Court's subpoena

power who may possess relevant knowledge. Five of the alleged prior art inventors are located within this district, *see* Dkt. No. 31-55, and customers residing or working in this district have downloaded the accused product from 3S's website, *see* Dkt. No. 31-51. Finally, it is likely that many witnesses are 3S employees located in Germany. Accordingly, the Court finds that the second *Volkswagon I* factor is neutral and does not weigh in favor of transfer.

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. While the Court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000).

The non-party witnesses identified by 3S and Rockwell are located throughout the country. Though Schweitzer witnesses are located in the Eastern District of Washington, Schweitzer's Sales and Customer Service Director is located in Texas, as are certain inventors of the alleged prior art and the attorney who prosecuted the patents-in-suit. As for party witnesses, Rockwell witnesses are likely to travel from Milwaukee, Wisconsin or Mayfield Heights, Ohio, and 3S's witnesses from Germany. These witnesses would at best be equally inconvenienced by travelling to the Eastern District of Washington. The Court therefore finds this factor neutral.

The fourth factor includes other practical problems, such as problems related to judicial economy. 3S primarily contends that more live witnesses would testify at trial in the Eastern District of Washington than would testify in this district, and, as a result, the jury could more effectively evaluate witness demeanor and credibility in the transferee district. *See* Dkt. 15 at 16. Yet 3S does not identify any specific third-party witness whose live testimony would be

available in Washington but unavailable in Texas. As explained, a significant number of witnesses who will likely have knowledge of the claimed invention, the alleged prior art, and the accused technology are either party witnesses, witnesses within the parties' control, or witnesses subject to the Court's subpoena power. This final private interest factor therefore does not weigh in favor of transfer.

2. *Public Interest Factors*

3S contends that two public interest factors, local interests and court congestion, weigh in favor of transfer. The Court must consider local interest because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagon I*, 371 F.3d at 206. 3S argues that jurors should not be called to duty in this district when the district has no relation to the litigation. But the facts presented thus far suggest otherwise. The customer 3S emphasizes most—Schweitzer—has held training seminars teaching the accused technology in this district. *See* Dkt. No. 31-33 at 1. In addition, customers in this district have downloaded the accused product from 3S's website, *see* Dkt. No. 31-51, and five alleged prior art authors are located within this district, *see* Dkt. No. 31-55. Even assuming a large number of Schweitzer witnesses will be relevant at trial, the local interest factor is at best neutral in light of the specific witnesses identified by Rockwell and the amount of accused activity having no relation to Schweitzer.

Finally, the Court may consider how quickly a case will advance to trial and be resolved. *Genentech*, 566 F3d at 1347. 3S argues that the Eastern District of Texas, and the Marshall division in particular, has an "extraordinary number of patent cases pending on its docket," particularly in comparison to the relatively low number of patent cases in the Eastern District of Washington. *See* Dkt. 15 at 18. 3S's statistics, however, bear little meaning because 3S ignores

8

that this district and the transferee district do more than resolve patent cases. *See In re Genentech*, 566 F.3d at 1347 ("[C]ase-disposition statistics may not always tell the whole story."). The comparison between this district and the transferee district is speculative, and as a result, the Court finds the congestion factor neutral. *See id.* ("[W]hen, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.").

## IV. CONCLUSION

3S admitted in its Answer that 3S has sufficient contacts with this district to give rise to personal jurisdiction, and that venue is proper in this district. 3S's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. Nos. 11, 15) is therefore **DENIED AS MOOT**. 3S alternatively requested transfer. A motion to transfer venue, however, should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342. 3S has failed to show that transfer to the Eastern District of Washington would clearly be more convenient—none of the *Volkswagen* factors favor transfer. Accordingly, 3S's Motion to Transfer Venue (Dkt. No. 11, 15) is **DENIED**.

**SIGNED this 21st day of September, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE