**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC.<br>Plaintiff,<br><br>v.<br><br>3S-SMART SOFTWARE SOLUTIONS,<br>GMBH<br>Defendant. | Civil Action No. 2:15-cv-01543<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF ROCKWELL AUTOMATION, INC.'S RESPONSE TO**
**3S'S NOTICE OF SUPPLEMENTAL AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION ON THE PLEADINGS THAT THE ASSERTED CLAIMS**
**OF THE '817, '225, AND '567 PATENTS ARE INVALID FOR FAILURE TO CLAIM**
**PATENTABLE SUBJECT MATTER**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. UNLIKE THE *AFFINITY LABS* CLAIMS, THE CHALLENGED CLAIMS
SATISFY THE *MAYO/ALICE* STEP ONE INQUIRY BECAUSE THEY
ARE NOT DRAWN TO ABSTRACT IDEAS ...................................................... 1

III. UNLIKE THE AFFINITY LABS CLAIMS, THE CHALLENGED CLAIMS
SATISFY THE MAYO/ALICE STEP TWO INQUIRY BECAUSE THEY
RECITE MORE THAN ABSTRACT IDEAS ...................................................... 3

IV. CONCLUSION ............................................................................................................. 5

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  No. 2015-2080 (Fed. Cir. Sept. 23, 2016) .........................................................1, 3, 5

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  No. 2015-1845 (Fed. Cir. Sept. 23, 2016) .........................................................1, 3, 5

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC et al.*,
  2016 WL 3514158*6 (Fed. Cir. June 27, 2016) ........................................................4

*DDR Holdings v. Hotels.com, L.P., et. al.*,
  773 F.3d 1245 (Fed. Cir. 2014).........................................................................2, 4

*Enfish, LLC v. Microsoft Corp.*,
  822 F. 3d 1327 (Fed. Cir. May 12, 2016) ...........................................................2, 4

*Research Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010).............................................................................3

I.      **Preliminary Statement**

In its September 26, 2016 Notice of Supplemental Authorities (Dkt. 97, "Notice"), 3S

incorrectly alleges that the challenged claims of the '817, '225, and '567 patents ("challenged

claims") relate to the patent claims discussed in two recent Federal Circuit decisions: *Affinity*

*Labs of Texas, LLC v. DirecTV, LLC*, No. 2015-1845 (Fed. Cir. Sept. 23, 2016) and *Affinity Labs*

*of Texas, LLC v. Amazon.com Inc.*, No. 2015-2080 (Fed. Cir. Sept. 23, 2016).  Unlike the claims

discussed in the *Affinity Labs* decisions, the challenged claims are directed to the solution of a

technological problem and improvements in industrial automation and not simply "components

[that are] conventional and [are] used in conventional ways" as 3S argues.  *Affinity Labs v.*

*DirecTV*, slip op. at 13.

II.     **Unlike The *Affinity Labs* Claims, The Challenged Claims Satisfy The *Mayo/Alice***
        **Step One Inquiry Because They Are Not Drawn To Abstract Ideas**

The Federal Circuit found that the claims discussed in the *Affinity Labs* decisions were

drawn to abstract ideas because they contained "nothing … directed to *how* to implement" the

claimed technology (*Affinity Labs v. DirecTV*, slip op. at 8, emphasis in original) and "do no

more than describe a desired function or outcome, without providing any limiting detail that

confines the claim to a particular solution to an identified problem." *Affinity Labs v. Amazon*, slip

op. at 7.  However, the challenged claims at issue here do not suffer from these shortcomings as

they both describe *how* an industrial automation systems can be enhanced and are confined to the

particular solution of collecting and using identity data to solve the problems presented by

predecessor technology.

The challenged claims of the '817 and '225 patents are directed to how to solve

technological problems that were previously faced in setting up and maintaining industrial

automation systems, which could be traced to the need for previously-acquired knowledge of the

physical location and layout of components in an industrial automation system to be monitored in order to program early attempts at networked monitors.  The challenged claims also go further and describe *how* these solutions are implemented through the detailed and specific implementations of identity data that are described by the limitations of the challenged claims.

For example, in the challenged claims of the '817 patent, "identity" or "component designation data" is stored in the memory of monitored components and is retrieved by the monitoring stations and used as a basis for the monitoring stations generating user viewable monitoring displays of the parameters sensed by those components. In this way, the "prior knowledge" requirement of the previous monitoring systems could be eliminated. Similarly, the "database" of the '225 and '567 patent claims enable a programmer of a monitoring station to more easily obtain "component data" and "language fields for textual labels" directly from the "database" for use in user-viewable representations rather than from any "prior knowledge" of the system. In sum, the challenged claims enhance the functionality of an industrial automation system itself as they describe in detail how to implement an industrial control architecture which allows the system and architecture to be easier to implement at the installation phase, allowing the system and architecture to operate more flexibly once set up. Response at 1-3; Sur-Reply at 3.

Accordingly, the challenged claims are similar to the claims in *DDR Holdings* because they "overcome a problem specifically arising in the realm of [industrial automation]" (*DDR Holdings v. Hotels.com, L.P., et. al.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)) and the claims in *Enfish* because "the focus of the claims is on the specific asserted improvement in computer capabilities." *Enfish, LLC v. Microsoft Corp.*, 822 F. 3d 1327, 1335-36 (Fed. Cir. May 12, 2016).

Further, in contrast to the claims discussed in the *Affinity Labs* decisions, the solutions described by the challenged claims are limited to "specific applications or improvements to technologies" in industrial automation systems by the recitation of specific uses of "identity" information as described above, and are thus "not likely to be so abstract that they override the statutory language and framework of the Patent Act."). *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010); *see also* Response at 7-9. The challenged claims do not broadly preempt any method for displaying data in an industrial automation system. Rather, the challenged claims are limited to only solutions for displaying data that employ the particular claimed approaches that base the display of data on identity data collected from components in the industrial control system.

**III.    Unlike The Affinity Labs Claims, The Challenged Claims Satisfy The Mayo/Alice Step Two Inquiry Because They Recite More Than Abstract Ideas**

Having found that the claims in *Affinity Labs* are drawn to abstract ideas, the Federal Circuit applied step two of the *Alice/Mayo* test and held that the claims are ineligible for patent protection because they contain "no inventive concept that transforms the abstract idea of out-of-region delivery of regional broadcasting into a patent-eligible application of that abstract idea" (*Affinity Labs v. DirectTV*, slip op. at 15, internal citation omitted) and "nothing in the claims or the specification of the [challenged] patent [] constitutes a concrete implementation of the abstract idea in the form of an "inventive concept." *Affinity Labs v. Amazon*, slip op. at 10, internal citations omitted.

In contrast, the challenged claims are drawn to novel approaches to displaying information based upon identity and component data obtained from components in industrial automation systems and describe in detail the mechanisms by which the identity data is used to

3

improve the functioning and performance of the claimed industrial automation systems, another fact which 3S does not refute in its Notice.

Further, the challenged claims, as an ordered combination of elements and viewed in light of the specification, describe concrete implementations of the inventive concept of collecting identity data from components in the system and using it as the basis for generating user viewable displays of other monitored data from those components.  As just one example, in claim 1 of the '817 patent, a monitoring station polls components over a data network to obtain the identity data that is stored in a memory circuit of each component, the identity data is transmitted to the monitoring station, and the monitoring station generates a display based on the identity data.  This is a concrete implementation of the inventive concept and the claims do "not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR* at 1257.  Similar concrete implementations are recited in the other challenged claims, including those of the '225 and 567 patents.

Moreover, not only do the novel techniques described in the challenged claims allow industrial automation systems to operate and be commissioned more efficiently, as did the techniques described in the *DDR* and *Enfish* claims, the novel techniques described in the challenged claims also improve the performance of networked industrial automation monitors also provide an inventive distribution of functionality within industrial automation networks. *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC et al.*, 2016 WL 3514158*6 (Fed. Cir. June 27, 2016).

## IV.   Conclusion

Accordingly, the two recent *Affinity Labs* Federal Circuit decisions raised by 3S in its Notice do not support 3S's Motion.  Rather, they provide additional support for why the Court should find the challenged claims of the '817, '225, and '567 patents patent-eligible and why 3S's Motion to find them invalid should be denied.

Dated: October 13, 2016

Respectfully Submitted,

*/s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
Walter W. Lackey, Jr.
State Bar No. 24050901
FINDLAY CRAFT, P.C.
102 North College Avenue
Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com
wlackey@findlaycraft.com

Paul J. Tanck (NY-4298840)
Gregory J. Carbo (NY-4460101)
CHADBOURNE & PARKE LLP
1301 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369
ptanck@chadbourne.com
gcarbo@chadbourne.com

*COUNSEL FOR PLAINTIFF*
*ROCKWELL AUTOMATION, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2016, I electronically filed the foregoing Plaintiff Rockwell Automation, Inc.'s Response To 3S's Notice Of Supplemental Authorities In Support Of Defendant's Motion On The Pleadings That The Asserted Claims Of The '817, '225, And '567 Patents Are Invalid For Failure To Claim Patentable Subject Matter with the Clerk of the Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of record.

/s/ *Eric H. Findlay*
Eric H. Findlay